UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JASON JINKS                                        CIVIL ACTION NO. 08-432

VERSUS                                             JUDGE S. MAURICE HICKS, JR.

LA DEPT OF PUBLIC SAFETY                           MAGISTRATE JUDGE HORNSBY
& CORRECTIONS, ET AL.

**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss Pursuant to FRCP Rule 12(b)(6) (Record Document 15) filed by two of the defendants, the State of Louisiana, through the Department of Public Safety and Corrections ("the State"), and Billie Jamison ("Jamison"). Specifically, the State and Jamison move for dismissal of plaintiff Jason Jinks' ("Jinks") Title 42, United States Code, Section 1983 claim. See id.[1] Jinks opposed the motion. See Record Document 21. For the reasons which follow, the Motion to Dismiss is **GRANTED** and Jinks' Section 1983 claim against Jamison is **DISMISSED WITH PREJUDICE**.

I.   **BACKGROUND.**

Jinks seeks damages for deprivation of his constitutionally protected liberty and property without due process under Section 1983. See Record Document 1-2. His Section 1983 claim arises out of his allegation that he was unlawfully incarcerated because of an erroneous calculation of his release date. See id.

---

[1] The Court has reviewed Jinks' "Petition for Damages" and finds that Jinks asserted his Section 1983 claim against Jamison and Lieutenant Joe Lee, a co-defendant in this case. No Section 1983 claim was asserted against the State.
  The State and Jamison have moved for dismissal of Jinks' state law claims in a separate Motion for Summary Judgment. See Record Document 16. The remaining defendants, Larry Deen, Sheriff of Bossier Parish, Louisiana, and Lieutenant Joe Lee, have also moved for summary judgment as to all of Jinks' claims. See Record Document 31.

Specifically, Jinks alleges that on September 27, 2005, he was arrested in Bossier Parish and charged with possession of methamphetamine. See id. at ¶ 4. On September 25, 2007, he entered a plea of guilty in and was sentenced to a term of three years hard labor with credit for time served. See id. at ¶ 5.

While in Bossier Parish custody as a result of the methamphetamine conviction, Jinks alleges that he received notice that he had been charged in Caddo Parish with a probation violation. See id. at ¶ 9. He plead guilty to the charge of probation violation and was sentenced to three years hard labor to run concurrently with his Bossier Parish sentence for possession of methamphetamine. See id. at ¶ 11.

Jinks further alleges that Jamison was responsible for the computation of his release date on behalf of the Department of Public Safety and Corrections. See id. at ¶ 7. He contends that Jamison's release date computation of January 9, 2008 was erroneous. See id. at ¶ 13. Instead, he maintains that he should have been released on February 16, 2007. See id.

On October 1, 2007, Jinks' girlfriend made several telephone calls to the Department of Public Safety and Corrections concerning Jinks' release date computation. See id. at ¶ 28. Jinks contends that as a result of this inquiry, he was released on October 2, 2007. See id. at ¶ 29.

## II.  LAW AND ANALYSIS.

### A.  Rule 12(b)(6) Standard.

In deciding a Rule 12(b)(6) motion to dismiss, the district court must "accept[] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." In re

Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007). Notwithstanding, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face." Id., citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. Yet, if the allegations set forth in the complaint, even if true, could not raise a claim of entitlement to relief, the court will expose the basic deficiency "at the point of minimum expenditure of time and money by the parties and the court." Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007).

Additionally, "a plaintiff suing a public official under § 1983 [must] file a short and plain statement of his complaint, a statement that rests on more than conclusions alone." Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir. 1995). The district court may also, in its discretion, insist that such a plaintiff file a reply tailored to an answer pleading the defense of qualified immunity. See id. at 1433 -1434.

**B.    Qualified Immunity.**

Qualified immunity shields government officials, performing discretionary duties, from civil damages liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. See Pasco ex rel. Pasco v. Knoblauch, 566 F.3d 572, 578 (5th Cir. 2009), citing Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). "More precisely, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right . . . in the light of pre-existing law the unlawfulness must be apparent." Id. (internal quotation and citation omitted). The Fifth Circuit has held that pre-existing law

must dictate, not just suggest or allow or raise a question about, the conclusion for every like-situated, reasonable government official that what defendant is doing violates federal law in the circumstances. See id. at 578-579 (internal quotation and citation omitted). Generally, the Fifth Circuit resolves qualified immunity claims under the two-part test set forth by the Supreme Court in Saucier v. Katz, deciding (1) whether facts alleged or shown by plaintiff make out the violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct. See id. at 579, citing Saucier, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001).

Here, Jinks is seeking compensatory and punitive damages under Section 1983 against Jamison in her individual capacity for the "deprivation of rights secured by the Constitution of the United States and, specifically, for deprivation of his liberty without due process in violation of the Fifth and Fourteenth Amendments to the Constitution." Record Document 1-2 at ¶ 33. Jamison argues that she is protected from liability on the basis of qualified immunity.

**Fifth Amendment**

Jinks has alleged a Fifth Amendment claim against defendant Jamison, an employee of the State of Louisiana. Yet, the Fifth Amendment applies only to the actions of the federal government. See Morin v. Caire, 77 F.3d 116, 120 (5th Cir. 1996) ("Similarly, the Fifth Amendment applies only to the actions of the federal government, and not to the actions of a municipal government as in the present case."); Richard v. Hinson, 70 F.3d 415, 416-417 (5th Cir. 1995) ("Although petitioner asserts that his Fourteenth Amendment equal protection rights were violated, his claims actually arise under the Fifth Amendment which protects parties from unjustifiable discriminatory applications of law. The Fourteenth

Amendment protects against actions by states but here, the federal government is the subject of petitioner's complaints making the Fourteenth Amendment inapplicable."). Even if the Court accepts all of Jinks' allegations as true, he has failed to allege facts to make out a violation of the Fifth Amendment, as the amendment is simply inapplicable to the instant matter because Jamison is not a federal actor. Therefore, the Motion to Dismiss is **GRANTED** as to Jinks' Fifth Amendment claim.[2]

**Fourteenth Amendment**

Jinks has alleged a Fourteenth Amendment claim deprivation of his liberty without due process. However, he has not alleged any purposeful or intentional miscalculation of the release date by Jamison.[3] Accordingly, his claim against Jamison appears to be based

---

[2]Jinks argued that "Jamison was not performing a discretionary function," thus she does not within the class of public officials intended to be protected by qualified immunity. Record Document 21 at 3. He further maintained:

> It was not she who sentenced the plaintiff, but it was she who ignored, or misread, the lawfully imposed sentence of the 1st Judicial District Court, and it was she who established a release date for the [p]laintiff that was some 11 months longer than ordered by the court.

Id. at 3-4. The Court disagrees.
"A discretionary function-as distinguished from a ministerial duty, which requires rote obedience to orders or performance of a function to which the actor has no choice-involves personal deliberation, decision and judgment." Murray v. Earle, 405 F.3d 278, 294 (5th Cir. 2005). The Court finds that Jamison's actions in this case were, in fact, discretionary functions. Her function was to compute Jinks' release date, which required her to interpret not only a judgment from the 26th Judicial District Court, Bossier Parish, Louisiana, but also a judgment from the 1st Judicial District Court, Caddo Parish, Louisiana. In light of the interplay of these two judgments, the Court believes that Jamison necessarily invoked deliberation, decision, and judgment in her calculation of Jink's release date.

[3]Conversely, Jinks alleged that his Section 1983 claim against Lieutenant Joe Lee, a co-defendant in this case, is based on "Lee's *deliberate indifference* to the plaintiff's being denied his constitutionally protected right not to be deprived of liberty without due process." Record Document 1-2 at ¶ 33 (emphasis added). No similar allegation was

on negligence or carelessness.

It is well settled that Section 1983, which provides a cause of action for the deprivation of federal constitutional and statutory rights under color of state law, contains no independent state-of-mind requirement. See Parratt v. Taylor, 451 U.S. 527, 534-35, 101 S.Ct. 1908 (1981). Instead, the requisite intent in a Section 1983 case depends upon the standard necessary to establish a violation of the underlying constitutional or statutory right. See Daniels v. Williams, 474 U.S. 327, 330, 106 S.Ct. 662, 664 (1986). In Daniels, the Supreme Court reasoned that the Due Process Clause was not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property. See id. at 328, 106 S.Ct. at 663. The Daniels court further reasoned that the term "deprive," as employed in the Fourteenth Amendment, suggests more than a mere failure to take reasonable care. See id. at 330, 106 S.Ct. at 664. Specifically, it connotes an intentional or deliberate denial of life, liberty, or property. See id.

Here, Jinks has not alleged deliberateness in connection with Jamison's alleged miscalculation of his release date. At most, it appears that Jinks believes jamison was negligent and/or failed to take reasonable care. Thus, even if the Court accepts Jinks' allegations as true, he has failed to allege sufficient facts of intentional or deliberate denial of liberty to make out a violation of the Fourteenth Amendment's Due Process Clause. Thus, the Motion to Dismiss is **GRANTED** as to Jinks' Fourteenth Amendment claim.

### III. CONCLUSION.

Based on the foregoing, the Motion to Dismiss (Record Document 15) is **GRANTED**

---

made against Jamison.

and Jinks' Section 1983 claim against Jamison is **DISMISSED WITH PREJUDICE**.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 26th day of October, 2009.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE