UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

JASON JINKS                                          CIVIL ACTION NO. 08-432

VERSUS                                               JUDGE S. MAURICE HICKS, JR.

LA DEPT OF PUBLIC SAFETY                             MAGISTRATE JUDGE HORNSBY
& CORRECTIONS, ET AL.

**MEMORANDUM RULING**

Before the Court is an unopposed Motion for Summary Judgment (Record Document 31) filed by the remaining defendants, Larry Deen, Sheriff of Bossier Parish, Louisiana ("Sheriff Deen"), and Lieutenant Joe Lee ("Lieutenant Lee"). Specifically, Sheriff Deen and Lieutenant Lee move for dismissal of plaintiff Jason Jinks' ("Jinks") Title 42, United States Code, Section 1983 claims on the grounds of qualified immunity and Louisiana state law claims on the grounds that Jinks did not exhaust his administrative remedies prior to filing the instant lawsuit. Jinks opposed the motion. See Record Document 23. For the reasons which follow, the Motion for Summary Judgment is **GRANTED** and all of Jinks' claims against Sheriff Deen and Lieutenant Lee are **DISMISSED**.

**I.    BACKGROUND.**[1]

Jinks was an inmate at a Bossier Parish Security Facility from September 30, 2005,

---

[1] Under Local Rule 56.2, an opposition to a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried. Rule 56.2 further provides that "these facts will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Here, Jinks did not oppose the Motion for Summary Judgment and likewise did not controvert the Statement of Uncontested Fact (Record Document 31-5). Accordingly, all facts set forth in the Statement of Uncontested Fact are deemed admitted and have been adopted by the Court for purposes of the instant Memorandum Ruling.

the date of his arrest, to October 2, 2007, when he was released from jail by an order from the Department of Public Safety and Corrections. Jinks was sentenced on September 25, 2006, in State v. Jinks, No. 139744, 26th Judicial District Court, Bossier Parish, Louisiana and received three years hard labor with credit for time served.

The Department of Public Safety and Corrections issued a Master Record on October 23, 2006, stating a release date of February 16, 2007. Jinks acknowledged he had received a copy of the Louisiana Department of Public Safety and Corrections Disciplinary Rules, Inmate Property List, and General Information Sheet on November 1, 2006. This form also included information relative to time computation.

On October 31, 2006, Jinks pled guilty to a charge of probation violation in Caddo Parish and was sentenced to three years at hard labor to run concurrently with his previous sentence from Bossier Parish. The Department of Public Safety and Corrections issued a Master Record on November 17, 2006, stating a new release date of January 9, 2008.

In January 2007, Jinks obtained a copy of the transcript of the hearing for probation violation in Caddo Parish District Court. Jinks wrote a "Kite Communication" to Lieutenant Lee on February 26, 2007, requesting information on his release date. The communication was answered on February 27, 2007, indicating the information would come from the Department of Public Safety and Corrections.

On May 29, 2007, Jinks was transferred to the work release program. The checks earned were endorsed to Sheriff Deen per the work release program. From these checks, daily expenses for housing and board were deducted with the remaining amounts being deposited into an account for Jinks. Sheriff Deen did not personally deduct the amounts.

On June 1, 2007, Jinks appeared before the Parole Board and raised the issue that

he was four (4) months overdue for release. He was denied parole on June 4, 2007. He then gave the transcript previously requested and received during January 2007 to his girlfriend. Jinks alleges that after several telephone calls by his girlfriend to the Department of Public Safety and Corrections, he was released from jail on October 2, 2007. Yet, according to the undisputed facts set forth by Sheriff Deen and Lieutenant Lee, the only way Jinks could be released from prison was upon the receipt of the "Diminution of Sentence" form forwarded by the Department of Public Safety and Corrections. Once this form was received by the Bossier Parish Minimum Security Facility from the Department of Public Safety and Corrections, Jinks was released on October 2, 2007, by order of the Department of Public Safety and Corrections.

Jinks never filed a grievance relating to time computation and/or an erroneous release date with either the Bossier prison facility or the Department of Public Safety and Corrections. Jinks was a Department of Public Safety and Corrections' prisoner. As such, his release date was calculated by the Department of Public Safety and Corrections, and the Department of Public Safety and Corrections informed the Sheriff's personnel of that date. Neither Sheriff Deen nor Lieutenant Lee were responsible for determining the release date for Department of Public Safety and Corrections' prisoners such as Jinks. Instead, they merely relied on the date provided by the Department of Public Safety and Corrections.

Jinks filed suit against Sheriff Deen and Lieutenant Lee alleging violation of his due process rights under Section 1983; demanded damages for wrongful/false imprisonment under Louisiana Civil Code Article 2315; and demanded an accounting and repayment of the money he earned in the work release program under Louisiana Civil Code Article 2298.

See Record Document 1-2. Sheriff Deen and Lieutenant Lee filed the instant Motion for Summary Judgment, seeking dismissal of all of Jinks' claims.

## II.     LAW AND ANALYSIS.

### A.     Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stall v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Alton v. Tex. A&M Univ., 168 F.3d 196, 199 (5th Cir. 1999).

### B.     Section 1983 Claims.

Jinks is seeking compensatory and punitive damages under Section 1983 against Lieutenant Lee for the "deprivation of rights secured by the Constitution of the United

States and, specifically, for deprivation of his liberty without due process in violation of the Fifth and Fourteenth Amendments to the Constitution." Record Document 1-2 at ¶ 33. Jinks specifically alleged that Lieutenant Lee was deliberately indifferent. See id. at ¶ 34. Lieutenant Lee argues that he is protected from liability on the basis of qualified immunity.

Qualified immunity shields government officials, performing discretionary duties, from civil damages liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. See Pasco ex rel. Pasco v. Knoblauch, 566 F.3d 572, 578 (5th Cir. 2009), citing Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). "More precisely, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right . . . in the light of pre-existing law the unlawfulness must be apparent." Id. (internal quotation and citation omitted). The Fifth Circuit has held that pre-existing law must dictate, not just suggest or allow or raise a question about, the conclusion for every like-situated, reasonable government official that what defendant is doing violates federal law in the circumstances. See id. at 578-579 (internal quotation and citation omitted). Generally, the Fifth Circuit resolves qualified immunity claims under the two-part test set forth by the Supreme Court in Saucier v. Katz, deciding (1) whether facts alleged or shown by plaintiff make out the violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct. See id. at 579, citing Saucier, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001).

Even without reaching the qualified immunity question, Jinks' Section 1983 claims fail as a matter of law. Under Section 1983, a plaintiff must identify defendants that were either personally involved in a constitutional violation or whose acts were causally

connected to the constitutional violation alleged. See Woods v. Edwards, 51 F.3d 577, 583 (5th Cir. 1995). There are simply no facts indicating that Lieutenant Lee was personally or directly involved in any deprivation of constitutional guarantees. Lieutenant Lee did not personally participate in any conduct that allegedly injured Jinks. Further, while it appears that Jinks did not state a Section 1983 against Sheriff Deen, there are likewise no facts that show Jinks was damaged by any policy, custom, or act of Sheriff Larry Deen. In fact, there is no record evidence indicating the existence of any unconstitutional custom or policy on behalf of the Sheriff. Thus, there is no basis upon which relief can be granted, as Section 1983 liability can not be premised upon respondent superior. See Thompkins v. Belt, 828 F.2d 298 (5th Cir. 1987); Monell v. Dep't of Social Services, 436 U.S. 658, 98 S.Ct. 2018 (1978).

With respect to his Fourteenth Amendment due process claim, Jinks has alleged Lieutenant Lee acted with deliberate indifference. However, he has come forward with no competent summary judgment evidence to support such allegation. At best, his Fourteenth Amendment claim is based on negligence or carelessness.[2] The Due Process Clause is not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property. See Daniels v. Williams, 474 U.S. 327, 328, 106 S.Ct. 662, 663 (1986). Rather, the term "deprive," as employed in the Fourteenth Amendment, suggests connotes an intentional or deliberate denial of life, liberty, or property. See id. at 330, 106 S.Ct. at 664. Thus, even if the Court accepts Jinks' allegations as true, he has failed to allege

---

[2]The standard for qualified immunity is deliberate indifference not negligence. See Wagner v. Bay City, Texas, 227 F.3d 316 (5th Cir. 2000). The official must have subjective knowledge of the risk of harm for deliberate indifference to be present. See id. Deliberate indifference is more than mere negligence or failure to act reasonably. See id. at 324.

sufficient facts of intentional or deliberate denial of liberty to make out a violation of the Fourteenth Amendment's Due Process Clause. Thus, the Motion for Summary Judgment is **GRANTED** as to Jinks' Fourteenth Amendment claim against Lieutenant Lee.[3]

### C. State Law Claims.

Jinks seeks damages for wrongful/false imprisonment under Louisiana Civil Code Article 2315 and for an accounting and repayment of the money he earned in the work release program under Louisiana Civil Code Article 2298.[4] Both of these claims are directly linked to Jinks' allegation that he should have been released on February 16, 2007, not January 9, 2008.[5]

Louisiana Revised Statute 15:1171(A) grants authority to the Department of Public Safety and Corrections and each sheriff to adopt administrative remedy procedures in compliance with federal law to receive, hear, and dispose of all offender complaints and grievances. See Williams v. Creed, 2007-0614 (La.App. 1 Cir. 12/21/07), 978 So.2d 419, 422; Owens v. Stalder, 2006-1120 (La.App. 1 Cir. 6/8/07), 965 So.2d 886.[6] Section 1171

---

[3]Jinks also alleged a Fifth Amendment due process claim against Lieutenant Lee, a state employee. Yet, the Fifth Amendment applies only to the actions of the federal government. See Morin v. Caire, 77 F.3d 116, 120 (5th Cir. 1996); Richard v. Hinson, 70 F.3d 415, 416-417 (5th Cir. 1995). Thus, Jinks has failed to allege facts to make out a violation of the Fifth Amendment right, as Lieutenant Lee is not a federal actor. Therefore, the Motion for Summary Judgment is **GRANTED** as to Jinks' Fifth Amendment claim.

[4]Article 2298 states, in pertinent part, that "[a] person who has been enriched without cause at the expense of another person is bound to compensate that person."

[5]While not plead clearly, it appears that Jinks' unjust enrichment claim is based on the argument that if he had been released on February 16, 2007, he would not have been transferred to the work release program on May 29, 2007.

[6]In Owens, the court further noted:

further provides that such complaints and grievances include actions pertaining to time computations. See id., citing La. R.S. 15:1171(B). The administrative remedy procedure is to provide the *exclusive remedy* to the offender for complaints governed thereby. See id. (emphasis added). Thus, a prisoner alleging an error in computation of time must pursue his claim through the administrative remedy procedure. See id.

Jinks acknowledged on two separate forms that he received a copy of the General Information Sheet from the Department of Public Safety and Corrections relative to "DOC Processing, Work Release, Substance Abuse Treatment, Time Computation (emphasis added), IMPACT, and Parole Board Hearings. See Record Document 31, Exhibit A. Further, in response to his informal "Kite Communication," Jinks was informed that information relating to his release date would come from the Department of Public Safety and Corrections. Despite this information, Jinks did not file for administrative relief or pursue the administrative remedy procedure with the Department of Public Safety and Corrections, as required by Section 1171(B). Thus, the Court finds that the undisputed record evidence establishes that Jinks did not exhaust the administrative remedies relating to the alleged miscalculation of his release date prior to the filing of the instant lawsuit. Accordingly, the Motion for Summary Judgment filed by Sheriff Deen and Lieutenant Lee is **GRANTED** and Jinks' Louisiana state law claims are **DISMISSED WITHOUT**

---

> Although Owens named a number of other persons employed in various capacities by DPSC, his claims against them all involved the calculation of his good time credit, which is ultimately the responsibility of DPSC. By our action in this case, those allegations are moot.

Owens, 965 So.2d at 890.

**PREJUDICE** for failure to exhaust administrative remedies.[7]

### III. CONCLUSION.

Based on the foregoing, the Motion for Summary Judgment (Record Document 16) is **GRANTED** and all of Jinks' claims against Sheriff Deen and Lieutenant Lee are **DISMISSED**.

A judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 26th day of October, 2009.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE

---

[7] Jinks alleges he is due compensatory damages under LA C.C. art. 2315. "Louisiana jurisprudence has long recognized a good faith defense to the award of damages when an official is acting in the course of his duty, under color of legal authority, and in furtherance of a legitimate state interest." Vincent v. St. of LA through Dep't of Corrections, 468 So.2d 1329, 1331 (La.App. 1 Cir. 1985). The Vincent court continued by stating:

> [W]hen prison officials act in reliance on good faith beliefs that what they are doing is constitutionally and lawfully permissible, they are not liable in damages as a consequence of their actions even if it should be later established that their beliefs were not well founded.

Id.
Here, the record establishes that Sheriff Deen and Lieutenant Lee were in good faith in relying on the computation of sentence as regulated by statute and calculation of the Department of Public Safety and Corrections. Thus, they are not liable in damages for their actions in maintaining Jinks' status of incarceration.